GABRIEL COLIL, alias, *vs.* MASSACHUSETTS SECURITY
CORPORATION & another.

JOSEPH N. HARB *vs.* SAME.

Plymouth.    October 15, 1923. — November 28, 1923.

Present: RUGG, C.J., BRALEY, DECOURCY, PIERCE, & JENNEY, JJ.

*Contract,* Rescission.

A corporation made a contract in writing with one denominated thereunder
a " subscriber," which provided for a sale of stock to the subscriber for a
designated sum, payment thereafter to be made by the subscriber in stated
instalments.    It was provided in the agreement " that in case of the death
of the Subscriber before the contract is fully paid, . . . [the corporation]
will refund the full amount paid in by the Subscriber to his or her legal
representative, provided a request therefor together with notice and proof
of the death is given to the Corporation within sixty days of the date of
death."    After the subscriber had paid a part of the sums of money required
by the provisions of the contract, he rescinded it because it was procured
by fraud, and brought an action for the recovery of such sums.    At the
close of the plaintiff's evidence at the trial of that action he, for the first
time, made a tender offering to return to the defendant the contract and to
give up any rights which he had thereunder.    A motion by the defendant
that a verdict be ordered in its favor was denied.    *Held,* that

(1) By reason of the character of the agreement, an offer to return the
contract was not a prerequisite to the bringing of the action;

(2) The promise by the corporation to refund to the legal representative
of the subscriber in case of his death did not introduce any third party
between the plaintiff and defendant, and was rendered valueless by the
rescission;

(3) The motion that a verdict be ordered for the defendant rightly was
denied.

TWO ACTIONS OF CONTRACT OR TORT against Massachusetts
Security Corporation and Pheeney Brothers, Incorporated,
for sums of money alleged to have been procured by the
defendants from the plaintiffs through false and fraudulent
misrepresentations by the defendants and upon contracts
described in the opinion.    Writs dated March 21, 1921.

Only Massachusetts Security Corporation was served
with process, and it alone hereinafter will be called the
defendant.

In the Superior Court the cases were tried together before *Cox*, J.   Material evidence is described in the opinion.   At the close of the plaintiffs' evidence and before the introduction of any evidence by the defendant Massachusetts Security Corporation, the plaintiff's attorney made the following tender: " I now offer to return the contracts and give up any rights which the plaintiffs have under the exhibits, the blue and white contracts, in each case, both Colil and Harb, and with that my case is closed."   No such tender previously had been made.   The defendant then presented in each case a motion that the judge order a verdict in its favor.   The motions were overruled.   The jury found for the plaintiff Colil in the sum of $220.50, and for the plaintiff Harb in the sum of $126, and answered, " Yes," to an inquiry made by the trial judge, whether they " found in each case that before the suit was brought the plaintiff rescinded his contract and notified the defendant."   The trial judge then reported the actions to this court for determination, judgments to be entered for the defendant in each case if the motions for directed verdicts should have been allowed, and otherwise judgments to be entered for the plaintiffs on the verdict.

*D. Needham,* for the defendant.

*H. C. Thorndike,* for the plaintiffs.

DeCourcy, J.   These cases were tried together.   The plaintiffs elected to proceed upon the counts in contract, based on alleged false representations made by an agent of the defendant in selling to them capital stock.   The sale to Colil was evidenced by the following agreement:

" Subscription Agreement
Massachusetts Security Corp.

" Agreement by and between the Massachusetts Security Corporation incorporated under the laws of Massachusetts, having its home office in Boston, Mass., and Gabriel E. Kamel Colil, 64 Standish Street, Brockton, Mass., hereinafter called the ' Subscriber.'

" Witnesseth: The said Massachusetts Security Corporation agrees to sell to the Subscriber, and the Subscriber agrees to purchase fifty shares of the Preferred Stock of the said Massachusetts Security Corporation of the par value of Ten Dollars ($10) each, fully paid and non-assessable, at

and for the sum of six hundred and fifty Dollars, payable as follows:

" One hundred and twenty Dollars, the receipt whereof is hereby acknowledged, and the balance in instalments of thirty Dollars, on the third day of each and every month hereafter until the full purchase price has been paid.

" When the Subscriber has made all of the payments above specified, the said Massachusetts Security Corporation agrees that it will deliver to said Subscriber, or his or her heirs, or assigns, certificate or certificates of said Preferred Stock, so paid for, together with ten shares of the Common Stock.

It is understood and agreed that no stock will be entitled to dividends until it has been fully paid for in cash in accordance with this agreement.

It is further understood and agreed that in case of the death of the Subscriber before the contract is fully paid, the Massachusetts Security Corporation will refund the full amount paid in by the Subscriber to his or her legal representative, provided a request therefor together with notice and proof of the death is given to the Corporation within sixty days of date of death.

No statement nor condition not contained herein shall be binding upon either party hereto, and no authority is given any salesman to make any alterations in this agreement.

" In Witness Whereof, the parties hereto have caused the same to be executed in duplicate and have thereto set their hands and seals this 3rd day of May 1920.

                    Massachusetts Security Corporation.
          (Signed) Gabriall Colel
          Subscriber
                    64 Standish Street
                    Address (St. & No.)
                         Brockton, Mass.
                              City and State

" Valid only when countersigned by:
" Witness:   (Signed) J. B. Trotman
                    Salesman "

Make all checks payable to the Massachusetts Security Corporation

A similar subscription agreement dated May 8, 1920, was signed by the plaintiff Harb.

At the close of the evidence for the plaintiffs, their counsel made a tender, offering " to return the contracts and give up any rights which the plaintiffs have under" them.   Motions of the defendant to direct verdicts in its favor were denied by the court.   The jury returned a verdict for Colil in the sum of $220.50, and for Harb in the sum of $126; and in response to a question submitted to them, answered that the plaintiff in each case rescinded his contract and notified the defendant, before bringing suit.

The sole contention now argued by the defendant, in support of its motion for directed verdicts, is that a return or tender of the " Subscription Agreement" was prerequisite to bringing an action at law based on a rescission.   The general rule as to such return of property is stated in *Snow* v. *Alley*, 144 Mass. 546, 551, as follows: " The right to rescind or avoid a contract proceeds upon the ground that a party has been fraudulently betrayed into making it, and, having thus been induced to part with his own property, may resume possession of it on returning that which he has himself received, and thus placing the other party in the same position that he was before the contract was made." For a discussion of the principles involved, see *O'Shea* v. *Vaughn*, 201 Mass. 412, 422.   The necessity of returning what the rescinding party received in execution of the contract is illustrated by the following cases.   In *Conner* v. *Henderson*, 15 Mass. 319, the lime which was the principal subject of the contract, was worthless.   It was held that prior to rescission the casks, being of some value, should have been restored.   *Morse* v. *Brackett*, 98 Mass. 205, dealt with the rescission of a contract for the sale of wool; and the return of the bags, which had identifying marks, was considered as necessary.   *Estabrook* v. *Swett*, 116 Mass. 303, where the plaintiffs were fraudulently induced to take the note of a third person in payment, decided that they could not upon rescission maintain an action on the original account without surrendering the note.   *Bassett* v. *Brown*, 105 Mass. 551, involved certificates of stock, and *Northampton National*

*Bank* v. *Smith,* 169 Mass. 281, a check which the bank had cashed after being instructed not to do so, and it was held necessary for the defrauded plaintiffs to return the stock and the check.

An important exception to the above general rule as to the restoration exists where the property received by the defrauded party is worthless. For instance, counterfeit bonds need not be returned. *Brewster* v. *Burnett,* 125 Mass. 68. The same is true of counterfeit notes. *Kent* v. *Bornstein,* 12 Allen, 342. Special stock, illegally issued and valueless, need not be returned before proving against the estate of the corporation in insolvency the amount paid for the stock. *Reed* v. *Boston Machine Co.* 141 Mass. 454.

In *Thurston* v. *Blanchard,* 22 Pick. 18, the vendee purchased goods as a result of false representations made by him, giving his own negotiable note for the price. The vendor brought trover to recover the value of the goods, and did not produce the note to be surrendered to the defendant until the trial. After stating the usual rule as to restoring the consideration when a contract is rescinded, it was said by Shaw, C.J. (pages 20, 21): " Had it [the note] not been negotiable, we think it quite clear, that there would be no necessity of returning it. Rescinding the contract for the sale, rescinds the contract of payment by the vendee. A note not negotiable, would have been nothing more than an express promise to pay for the goods, and would have been avoided with the sale. The court are of opinion, that a note, though payable to order, whilst it remains in the hands of the promisee, the vendor of the goods, is to be put on the same footing, and that the delivering it up was not a condition precedent to bringing the action. If not produced at the trial, to be surrendered, it might be presumed that it had been negotiated, and that would have been a bar to the action, upon the rule stated." See also *Whitton* v. *Mayo,* 114 Mass. 179. *Shaw* v. *Methodist Episcopal Society in Lowell,* 8 Met. 223. *Bridge* v. *Batchelder,* 9 Allen, 394, 396. In *Morse* v. *Woodworth,* 155 Mass. 233, the plaintiff rescinded a settlement made with the defendant on the ground of duress. He held a check and a release given by the

defendant, but did not tender back the release until the trial.   Knowlton, J., after stating the rule as to rescission continued (page 249): " But when all that was received was a promissory note of the other party, the note need not be tendered before bringing suit.   It is enough if it is delivered up at the trial; for as between the parties it is not property, but a mere promise . . . .   The defendant's release was not property in the hands of the plaintiff, and upon a rescission of the contract it became of no effect.   It was not necessary to return it to put the defendant *in status quo;* for after the rescission it could neither do the plaintiff any good nor the defendant any harm."

We are of opinion that the " Subscription Agreement " in these cases is governed by the doctrine stated in *Thurston* v. *Blanchard, supra,* and *Morse* v. *Woodworth, supra.*   As between the parties it is a mere receipt and promise; and all obligation thereunder on the part of the defendant ceased when the plaintiff rescinded the contract.   The promise to refund to the legal representative of the subscriber in case of his death does not really introduce any third party between the plaintiff and defendant, and was rendered valueless by the rescission.   The tender at the trial amply protected any rights of the defendant for which the agreement might be evidence.

The motions for directed verdicts were rightly denied. In accordance with the report judgment is to be entered for the plaintiff in each case, on the verdict.

*So ordered.*