Said SOLIMAN

v.

DIGITAL EQUIPMENT CORPORATION.

Civ. A. No. 92–12959–RGS.

United States District Court,
D. Massachusetts.

Nov. 22, 1994.

Andrea G. Garr, Phillips & Associates, Boston, MA, for plaintiff.

Sharon R. Burger and David C. Henderson, Nutter, McClennen & Fish, Boston, MA, for defendant.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

STEARNS, District Judge.

### BACKGROUND

Said Soliman brought federal and state age discrimination claims against his former employer, Digital Equipment Corporation (Digital), alleging disparate treatment (Count I) and disparate impact (Count II).[1] Soliman began working at Digital on February 11, 1985, as an accountant. In November of 1990, Digital gave Soliman, who was then fifty-nine years old, a Transition Financial Support Option (TFSO) as part of a plan to achieve a voluntary reduction of Digital's workforce. The TFSO offered 24.52 weeks pay, a year of health insurance, and job placement counselling in exchange for Soliman's voluntary resignation and waiver of all claims against Digital including any claims of age discrimination.[2] Soliman was told that he had four weeks (to December 14, 1990) to obtain a full time position at Digital. If he were unsuccessful, he could either accept the TFSO or remain at Digital as a temporary employee. Soliman was then relieved of his regular duties and assigned to Digital's Employee Resource Center. On December 13, 1990, Soliman signed the TFSO. Between July and December of 1990, 1,752 other Digital employees signed similar TFSOs.[3]

After he left Digital, Soliman availed himself of the benefits offered under the TFSO. In February or March of 1991, Soliman became dissatisfied with the TFSO and sought advice at a legal service center.[4] A legal services lawyer told Soliman that he had an age discrimination claim against Digital. In April of 1991, Soliman filed a pro se complaint with the Massachusetts Commission Against Discrimination (MCAD). By June of 1991, Soliman had retained his present lawyer. On December 14, 1992, he filed this lawsuit.

### DISCUSSION

In October of 1990, approximately a month before Digital offered Soliman the TFSO, Congress enacted the Older Worker Benefit Protection Act (OWBPA). The Act, at 29 U.S.C. § 626(f), formally defines the method an employer must use to obtain a

---

1. Soliman's original Complaint also alleged a violation of the Age Discrimination in Employment Act (ADEA), discrimination on the basis of national origin, and constructive discharge. On November 23, 1993, these Counts (III–V) were dismissed.

2. The TFSO contained the following waiver:

   Employee on behalf of Employee and Successors accepts the foregoing in full and complete satisfaction of any and all claims of any kind or description that Employee and Successors have, or may have had, or may have against Digital ... including but not limited to: claims arising from any employment relating laws; claims arising out of any state, federal or local law, regulation or executive order, prohibiting discrimination on account of age, race, sex, sexual orientation, national origin, religion, handicap or veterans status; claims arising under common law, including without limitation, claims arising from any contract or tort law; claims arising out of any law regulating the provision of employee benefits, or under any Digital benefit plan, claims arising out of any public policy, law or equity or claims for expenses, attorneys' fees, or other monetary or equitable relief or any other claim arising out of, or related to Employee's employment with, or resignation from Digital.

3. At oral argument, Digital's attorneys stated that all of its departing employees signed releases containing a waiver of age discrimination claims regardless of their actual age.

4. Soliman apparently went to the Center to discuss unemployment benefits.

valid waiver of an employee's ADEA claims.[5] OWBPA dictates that "[a]n individual may not waive any right or claim under [ADEA] unless the waiver is knowing and voluntary ... [A] waiver may not be considered knowing and voluntary unless at a minimum" it complies with the specific requirements set out at 29 U.S.C. § 626(f)(1)(A)–(H). If a dispute arises "over whether any of the requirements [of the Act] have been met, the party asserting the validity of a waiver shall have the burden of proving in a court ... that [the] waiver was knowing and voluntary." 29 U.S.C. § 626(f)(3).

For a waiver to comply with OWBPA, it must specifically refer to rights and claims arising under ADEA. 29 U.S.C. § 626(f)(1)(B). A waiver may be given "only in exchange for consideration in addition to anything of value to which the individual already is entitled." 29 U.S.C. § 626(f)(1)(D). An employee in Soliman's situation must be given 45 days to consider the employer's proposed waiver and must be advised in writing of the desirability of seeking the advice of an attorney before making a decision. 29 U.S.C. § 626(f)(1)(E) and (F)(ii). In addition, an employee must be given at least 7 days following the execution of a waiver to revoke the agreement. Until the revocation period expires, "the agreement [is not] effective or enforceable." 29 U.S.C. § 626(f)(1)(G).

Digital admits that the waiver signed by Soliman did not comply with the substantive requirements of OWBPA. Digital nonetheless contends that Soliman's waiver of his age discrimination claims is valid.[6] Digital concedes for purposes of summary judgment that a question of fact exists as to whether Soliman's acceptance of the terms of the TFSO was knowing and voluntary.[7] Digital argues, however, that that dispute is immaterial because Soliman ratified the TFSO by accepting its benefits after learning that his waiver was arguably defective.[8]

In reply, Soliman argues that he did not effectively waive his age discrimination claims because under OWBPA a waiver cannot be considered knowing and voluntary unless "at a minimum" if complies with the formalities of OWBPA. Because it is undisputed that Digital did not adhere to OWBPA's requirements, Soliman argues that his waiver cannot be deemed knowing and voluntary and it is therefore either ineffective or void.

At present, the effect of OWBPA's waiver requirements is the subject of a split in the federal circuits. In the Seventh Circuit, in *Oberg v. Allied Van Lines, Inc.*, 11 F.3d 679, 683 (7th Cir.1993), and in *Collins v. Outboard Marine Corp.*, 808 F.Supp. 590, 594 (N.D.Ill. 1992), waivers signed in violation of OWBPA were held not to bar an employee from bringing an age discrimination claim.[9] These two courts took somewhat differing approaches to the issue, although Soliman embraces both opinions.

In *Collins, supra,* the District Court held that a release "[could] not be deemed knowing and voluntary unless all of the technical requirements of OWBPA [had] first been satisfied." *Id.* at 594. The plaintiff in *Collins* had signed a release that did not comply with OWBPA. The release was therefore held to be "invalid as to plaintiff's ADEA claim." The defendant in *Collins*, like Digital here, argued that the plaintiff had ratified the invalid release by accepting the separation benefits. The District Court pointed out that its holding that the release was invalid was "tantamount to a determination that the scope of the release does not encompass a claim under ADEA. If the release does not encompass the ADEA claim, the consideration received by plaintiff was not in ex-

---

5. OWBPA passed Congress on October 16, 1990, and was signed immediately into law.

6. At a pretrial conference held on May 17, 1994, the parties were ordered to address the validity of Soliman's waiver as a preliminary and separate issue.

7. Soliman insists that he signed under duress.

8. It is unclear when Soliman first learned that the waiver was defective. Digital argues that he must have known after first consulting an attorney about his claims.

9. The District Court of Maryland recently decided to "follow the line of reasoning set forth in *Oberg.*" *Blistein v. St. John's College*, 860 F.Supp. 256, 262 (D.Md.1994).

change for relinquishing that claim. Rather, the separation benefits were received in exchange for those claims which plaintiff did, in fact, legally relinquish under the release. A cause of action under ADEA was not one of those claims." *Id.*

In *Oberg, supra,* the Court of Appeals held that a non-complying waiver is void because the specific language of OWBPA stating that " '[a]n individual may not waive any right or claim under this chapter unless it is knowing and voluntary', ... plainly restricts an employee's freedom to waive his rights or claims under ADEA." *Id.* at 683. The *Oberg* court was persuaded that this language indicated Congress's intent to occupy this area of the law and limit "the form in which an employee and employer may contract to waive ADEA provisions." *Id.* As such, the court held that "[u]nder OWBPA, unless a waiver contract takes the form required by the statute, an employer and employee cannot contract to waive the ADEA provisions." *Id.* In essence, *Oberg* holds that since employees may not waive the requirements of OWBPA, any contract that attempts to do so is void and therefore incapable of ratification because there is no valid antecedent promise to reaffirm. Relying on *Oberg,* Soliman argues that his waiver was void ab initio.[10]

Digital, citing the Fifth Circuit's decision in *Wamsley v. Champlin Refining and Chemicals, Inc.,* 11 F.3d 534, 539 (5th Cir. 1993), argues that OWBPA only sketches the outlines of an ideal waiver.[11] A waiver not following the OWBPA format, according to Digital's argument, is not void, it simply cannot be automatically considered knowing and voluntary. Digital argues that a non-conforming waiver is voidable. An employee thus may elect to void a non-complying waiver or to ratify it by engaging in conduct manifesting an intent to be newly bound.

In *Wamsley,* the Fifth Circuit felt that it was significant that Congress had failed to specifically state that waivers not in compliance with OWBPA would be void of any legal effect. The *Wamsley* court also noted that this issue is not discussed in the legislative history of OWBPA. 11 F.3d at 539 n. 8. The *Wamsley* court took the view that a blanket policy of voiding all non-conforming waivers "would be inconsistent with one of the expressed purposes of ADEA: 'to help employers and workers find ways of meeting problems arising from the impact of age on employment.' " *Id.* at 539 (quoting 29 U.S.C. § 621(b)). Moreover, the *Wamsley* court argued that the seven day grace period mandated by subpart (G) of § 626(f)(1) of OWBPA, would make no sense if all non-complying waivers were rendered irretrievably void by the statute. *Id.*

I am not persuaded by *Wamsley.* In the first instance, the language of OWBPA, while not specifically stating that all inferior waivers are void, does unambiguously command that "[a]n individual may not waive any right or claim under [ADEA] unless the waiver is knowing and voluntary." [12] Congress required that voluntariness be measured against a waiver's compliance with the subparts of OWBPA. While it would have been helpful had Congress simply stated that all non-complying waivers are void, that such was intended is clearly implied by the statutory injunction that no waiver is to be considered knowing and voluntary unless "at a

---

10. Under Massachusetts contract law, "[a] contract [that] is void ab initio, or void from the beginning, may not be enforced. No contractual duty exists, no breach of contract is possible, and no judgment for money damages can be obtained under the contract." *Massachusetts Municipal Wholesale Electric Co. v. Town of Danvers,* 411 Mass. 39, 54, 577 N.E.2d 283 (1991). Typically, a contract is void if the performance bargained for is illegal or if the contract is contrary to public policy. See 6A Corbin, *Contracts* §§ 1373, 1375. "The legal fiction of voiding ab initio, therefore, is applied only with the view of accomplishing justice or effectuating public policy." *Town of Danvers, supra* at 55, 577 N.E.2d 283.

11. In *Wittorf v. Shell Oil Company,* 37 F.3d 1151 (5th Cir.1994), the Fifth Circuit reaffirmed its holding in *Wamsley.*

12. OWBPA provides that "[i]n any dispute that may arise over whether any of the requirements, conditions, and circumstances set forth in [the Act] have been met, the party asserting the validity of a waiver shall have the burden of proving in a court of competent jurisdiction that a waiver was knowing and voluntary." 29 U.S.C. § 626(f)(3).

minimum" it complies with OWBPA's enumerated requirements.[13]

I also disagree with the *Wamsley* court that reading the statute to void non-conforming waivers is inconsistent with the goals of ADEA. Delineating a bright line between conforming and non-conforming waivers protects employees and employers. Employers can be confident that if they comply with OWBPA, employees will not later be able to express belated misgivings in the form of a lawsuit. Similarly, employees are guaranteed the minimum protections that Congress deemed necessary as a prerequisite to the intelligent surrender of a potentially valuable right.[14] Given the clear language of the OWBPA, the better approach is that taken in *Oberg*.[15] Accordingly, I hold that Soliman's waiver of his ADEA claims is void and that his acceptance and retention of the TFSO benefits cannot be considered a ratification.

■ Although the parties have not fully joined the argument, there is some force to Digital's contention that Soliman should be required to tender back the benefits he has received before being permitted to go forward with his lawsuit. Both parties were under the obvious impression at the time the bargain was made that Soliman was effectively waiving his age discrimination claims in return for the benefits offered in the TFSO package. Indeed, it is unlikely that Digital would have extended any of the benefits to Soliman had it known that the ADEA waiver was void. Both parties, in other words, shared a mistaken belief that went to the heart of the defective contract. See *Covich v. Chambers*, 8 Mass.App.Ct. 740, 749–750, 397 N.E.2d 1115 (1979).

> It is the settled rule that where a party seeks to avoid a contract induced by fraud or duress, or based on mutual mistake, if he had received anything of value under the agreement, he must return it or tender it back. The rule is stated, with ample citation of authorities in *Colil v. Massachusetts Security Corp.*, [247 Mass. 30, 33–34, 141 N.E. 580 (1923)] in which the court said that the rule was subject to an important exception, that return or tender of return was not required where what had been obtained was worthless.

Simpson and Alperin, 14 Mass.Practice, § 325.[16] See also *Restatement of Restitution*, § 16 (1986).

Soliman, citing the cases of *Oberg, supra, Forbus v. Sears Roebuck & Co.*, 958 F.2d 1036, 1040–41 (11th Cir.1992), and *Isaacs v. Caterpillar, Inc.*, 765 F.Supp. 1359 (C.D.Ill. 1991), argues that he should not be required to tender back the consideration because his situation is no different than that of the employee in *Hogue v. Southern Railway Co.*, 390 U.S. 516, 88 S.Ct. 1150, 20 L.Ed.2d 73 (1968). In *Hogue*, the Supreme Court held that a "tender back" of benefits paid by a rail

---

13. OWBPA, in other words, establishes a floor, not a ceiling. An effective waiver at a minimum must incorporate OWBPA's requirements. A waiver that is more expansive than OWBPA would be valid, but it must at least incorporate OWBPA's essentials. An analogy might be drawn to the Miranda rule. While police may tell a suspect more than Miranda requires (the so-called "fifth warning," for example, that a suspect may cut off questioning at any time), they may not tell him less.

14. I find *Wamsley's* last argument concerning OWBPA's seven day grace period similarly unpersuasive. An employee could sign a waiver that was in all respects valid under OWBPA, and then have second thoughts during the revocation period about the value of the agreement or the emotional (or financial) costs of surrendering the opportunity to achieve judicial vindication.

15. Soliman urges that *Collins* be followed rather than *Oberg*. Presumably, the tactical advantage is that under *Collins*, the TFSO would be deemed not to have included a waiver as to ADEA claims, while *Oberg* acknowledges the existence of the ADEA waiver and holds it void. Under *Collins*, Soliman can argue that he should keep the benefits he received under the TFSO because its non-ADEA components are untouched by the failed ADEA waiver.

16. Soliman argues that the only way that the status quo ante can be achieved is if he returns his separation benefits and Digital reinstates him to his prior position. See *Isaacs v. Caterpillar, Inc.*, 765 F.Supp. 1359, 1367 (C.D.Ill.1991). Soliman admits, however, that he was told that whether he accepted the TFSO or not he would be relegated to the status of a temporary employee. The TFSO was given in exchange for his voluntary resignation and waiver of claims, and not to forestall his involuntary termination. Soliman was not in other words bargaining for the retention of his job. That option had already been foreclosed.

carrier to one of its injured employees in exchange for a release was not a prerequisite to bringing suit under the Federal Employers' Liability Act (FELA). 390 U.S. at 516–518, 88 S.Ct. at 1151–1152. In *Hogue,* the plaintiff injured his knee during the course of his employment. He relied on a railroad doctor's assurance that the injury was only a bruise and signed a release in exchange for $105. After two operations and the removal of his kneecap, Hogue sought to reopen the claim without returning the $105. *Id.*

The Supreme Court concluded, in a brief per curiam opinion, that "[t]he question of whether a tender back of consideration was a prerequisite to the bringing of a suit is to be determined by federal rather than state law." 390 U.S. at 517, 88 S.Ct. at 1151. Thus, the issue was governed by the Court's construction of FELA. The Court held that "a rule which required a refund as a prerequisite to institution of suit would be 'wholly incongruous with the general policy of [FELA] to give railroad employees a right to recover just compensation for injuries negligently inflicted by their employees.'" *Id.* at 518, 88 S.Ct. at 1152 (quoting *Dice v. Akron, C & Y.R. Co.,* 342 U.S. 359, 362, 72 S.Ct. 312, 314, 96 L.Ed. 398 (1952)).

The Court's decision in *Hogue* is not determinative of the same issue under ADEA because of a critical distinction between the two Acts. Under FELA, quantification of damages—not liability—is the focus of settlement negotiations and waivers. *Wamsley, supra,* 11 F.3d at 541–542. Liability is presumed. The plaintiff in *Hogue* was able to keep the $105 while challenging his waiver because the railroad was ultimately responsible for his damages, including the $105, whether the employee's waiver was invalid or not. No analogous inference of liability exists as to Soliman's age discrimination claims because it cannot be presumed under ADEA that Soliman will ever be entitled to damages

or to damages equal to the amount of his TFSO benefits. To the extent that it is relevant here, *Hogue* held that the $105 paid to the railway employee would be deducted from whatever sum it was ultimately determined that he was due for his injury. This seems a fair resolution. To require Soliman to tender back the benefits he has received as a precondition of going forward with his lawsuit would likely chill his prospects of prosecuting what may prove to be a meritorious claim.[17] Should Soliman prevail, Digital on the other hand is entitled to a determination of what portion, if any, of the benefits it has paid Soliman, should be deducted from whatever award Soliman receives.[18]

### *ORDER*

For the foregoing reasons, Digital's motion for summary judgment is *DENIED.*

SO ORDERED.

---

**17.** The result would be different if it could be shown that Soliman accepted the benefits knowing that the waiver was void. Digital does not so contend.

**18.** Apportionment of the benefits package among the various claims for which Digital sought a waiver (only the ADEA waiver is void) is a factual determination that cannot now be resolved on

the basis of the present pleadings. The parties have also not briefed the implications of the TFSO's severability clause. It states that "[a] determination by a court of competent jurisdiction that any provision of this Agreement is invalid shall not affect the validity of any other provision of the Agreement, or of the Agreement itself."