**Ferdinand RODRIGUEZ, et al.**

v.

**PUERTO RICO MARINE MANAGEMENT, INC., et al., Defendants.**

**Civil No. 94–1619(DRD).**

United States District Court, D. Puerto Rico.

July 30, 1997.

Pedro J. Salicrup, Hato Rey, PR, for Plaintiffs.

Rafeal Cuevas-Kuinlam, Antonio Cuevas-Delgado, Cuevas, Kuinlam & Bermudez, Hato Rey, PR, Francisco Chevere, Manuel Fernandez-Bared, McConnell Valdes, San Juan, PR, Salvador Antonetti-Zequeira, Luis A. Oliver-Fraticelli, Fiddler, Gonzalez & Rodriguez, Francisco A. Ojeda-Diez, Dept. of Justice, San Juan, PR, Lino J. Saldana, Hato Rey, PR, for Defendants.

### OPINION AND ORDER

DOMINGUEZ, District Judge.

Plaintiffs, retired employees of Puerto Rico Marine Management, Inc. ("PRMMI"), filed this action under ADEA, OWBPA, ERISA, Puerto Rico's Law 100, Section 1983 of the Civil Rights Act, and breach of contract, seeking redress for the reduction of their retirement benefits. Pending before the Court are two motions for partial summary judgment, one by defendant PRMMI at Docket No. 121, and another by co-defendant Puerto Rico Maritime Shipping Authority ("PRMSA") at Docket No. 59. Plaintiffs opposed the above motions, *see* Docket Nos.

130 and 124, and the Court entertained oral arguments on June 1997.

PRMMI moves for dismissal of the causes of action under ADEA, OWBPA, Law 100, and Section 1983. PRMMI contends, among other things, that Plaintiffs released PRMMI from any possible cause of action arising from Plaintiffs' termination including causes of action under ADEA. PRMMI further claims that the cause of action under Section 1983 fails because there is no state action. PRMSA argues, among other things, that it is not an employer of the Plaintiffs and that it is protected by the Eleventh Amendment.

On the other side, Plaintiffs contend that through years 1991–1993 defendants PRMMI, PRMSA, and Buck Consultants, Inc.[1] forcibly compelled them to retire through an enticing and lucrative early retirement plan based on age factors. Plaintiffs argue that the early retirement plan was a pretextual scheme to "unilaterally terminate the employment of the plaintiffs and after terminated to unilaterally reduce the[ir] pensions." Plaintiffs further claim that the reduction in their pension payments invalidates the releases they executed in exchange for the early retirement plan.

## STANDARD FOR SUMMARY JUDGMENT

The function of summary judgment is "to pierce the boilerplate of the pleadings and examine the parties' proof to determine whether a trial is actually necessary." *Vega–Rodriguez v. Puerto Rico Telephone Co.,* 110 F.3d 174, 178 (1st Cir.1997) (citing *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992)). A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that: there is no genuine issue as to any material fact." .... Fed.R.Civ.P. 56(c). "To defeat a motion for summary judgment, the nonmoving party must demonstrate the existence of a trial worthy issue as to some material fact." *Cortés–Irizarry v. Corporación Insular De Seguros,* 111 F.3d 184, 187 (1st Cir.1997). "In applying this formulation,

a fact is 'material' if it potentially affects the outcome of the case," *Vega–Rodriguez,* 110 F.3d at 178, and "genuine" "if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortés–Irizarry,* 111 F.3d at 187. "Speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are impuissant in the face of a properly documented summary judgment motion. Moreover, even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.* 95 F.3d 86, 95 (1st Cir.1996) (citations omitted).

Pursuant to Local Rule 311.12, the proponent of a summary judgment motion shall serve and file "annexed to the motion a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried and the basis of such contention as to each material fact, properly supported by specific reference to the record." Local Rule 311.12. These facts are deemed admitted unless the nonmoving party files a similarly "separate, short, and concise statement of the material facts as to which it contends that there exists a genuine issue to be tried." *Id.* The purpose of this rule is to "lay[ ] out the material facts in dispute clearly for a district court that is swamped with an overwhelming number of civil and criminal dispositive motions." *Dominguez v. Eli Lilly and Co.,* 958 F.Supp. 721, 727 (D.P.R.1997). Failure to comply with Local Rule 311.12 can have severe consequences; indeed, as *Stepanischen* warns ... [,] the failure to make specific references to the Record 'would, where appropriate, be grounds for judgment against the party.' " *Id.* (quoting *Stepanischen v. Merchants Despatch Transport. Corp.,* 722 F.2d 922, 931 (1st Cir.1983)).

---

**1.** The Court previously dismissed the causes of action under ADEA, OWBPA, Law 100, and breach of contract, against co-defendant Buck Consultants, Inc. *See* Opinion and Order at Docket No. ——.

## FACTS

In conformity with the summary judgment standard, the Court sets forth the facts not in controversy, consistent with record support, in the light most favorable to the Plaintiffs. *See Vega–Rodriguez*, 110 F.3d at 176(1st Cir.1997); *see also Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990).

On or about November 1991, PRMMI offered its employees an Early Retirement Plan ("ERP").[2] The eligibility criteria for the ERP included age factors, specifically that the employee be at least fifty (50) years of age and a participant in PRMMI's Retirement Plan (the "Retirement Plan") for the previous five (5) years.[3] The ERP entailed enhanced benefits consisting of a five (5) years in age credit and a five (5) years in service credit for computation of the benefits in accordance with the Retirement Plan.[4] The Retirement Plan provided alternative methods of payment through a single life annuity or a social security leveling option, to be selected by the employee.[5]

On or about November 19, 1991, all eligible employees received a letter from PRMMI describing the Early Retirement Plan and including various attachments ("Retirement Package")[6] The Retirement Package included: 1) an Attachment A, comparing the estimated benefits the employee would be eligible to receive with and without the credits offered under the ERP, calculated using the single life annuity method of payment; 2) an Attachment B, explaining the health and dental benefit options of the ERP; 3) an Application Form to accept the ERP; 4) a Part One Waiver and Release of Liability Agreement; 5) a Part Two Waiver and Release of Liability Agreement; 6) a list of the job titles and ages of all the individuals eligible for the ERP; 7) a list of the ages and job titles of all individuals in the same classification or organizational unit who were not eligible for the ERP.[7]

All of the Plaintiffs retired under the ERP and each of them executed two releases: the Part One Waiver at the time they accepted the ERP,[8] and the Part Two Waiver on their last day of employment.[9] All plaintiffs were afforded forty-five (45) days to sign the Part One Waiver;[10] $ they were advised to consult with a lawyer of their choice;[11] and they were informed that they had seven (7) days to revoke the waiver.[12] The Part One Waiver provided that in consideration for executing said release the employees were to be given a pension to be calculated using the time credits allowed under the ERP.[13] The

2. See Letter from C.I. Hiltzheimer to All Employees of 11/1/91 at 2, DE 121, Exh. 8; *see also* Letter from C.I. Hiltzheimer to each employee eligible for the ERP, of 11/19/91 pp. 1–5, DE 121, Exh. 11 pp. 1–5.

3. *See* Letter from C.I. Hiltzheimer to each employee eligible for the ERP, of 11/19/91 at 1, ¶ 2, DE 121, Exh. 11, p. 1, ¶ 2.

4. *Id.* at 2, DE 121, Exh. 11, p. 2; *see also* Tr. Depo. Iris Hernandez at 135, DE 120, exh. 1.

5. Retirement Plan for Employees Of Puerto Rico Marine Management, Inc., as amended 1/1/89., Arts. 5.02–5.03, DE 121, exh. 2; *see also* Tr. Depo. Iris Hernandez, at 135, DE 120 exh. 1.

6. PRMMI's Request for Admissions. Requests 2–9, and Plaintiffs' answers thereto ¶ 2, DE 121 exhs. 9 and 10 respectively.

7. *Id.; see also* attachments to Letter from C.I. Hiltzheimer to each employee eligible for the ERP, of 11/19/91, DE 121, exh. 11.

8. Part One Waiver and Release of Liability Agreement for each Plaintiff, DE 121, exh. 15, as supplemented by DE 140, exh. 1.

9. Part Two Waiver and Release of Liability Agreement for each Plaintiff, DE 121, exh. 21, as supplemented by DE 140, exh. 4; *see also* PRMMI's Request for Admissions, Request # 17, and Plaintiffs' answer thereto ¶ 3, at DE 121 exhs. 9 and 10.

10. PRMMI's Request for Admissions, Request # 7, and Plaintiffs' answer thereto ¶ 2, at DE 121 exhs. 9 and 10 respectively.

11. *Id.* Request # 8; *see also* Part One Waiver ¶ 9.

12 *Id. Request # 9;* see also *Part One Waiver ¶ 10.*

13. The first waiver provided that:

In consideration of Employee executing this Agreement, the Company will, on the Retirement Date, provide the Employee the following benefits: a pension the amount of which it to be calculated in accordance with the Retirement Plan, but with Employee receiving an additional five years in age credit (up to a maximum of sixty five) and an additional five years in service credits (up to a maximum of twenty five) for purpose of calculating the basic portion of this benefit; and an option to

Part Two Waiver provided that in consideration for executing said release the employees were to be given a lump sum payment equal to two months base salary.[14] By executing the waivers the employees would release all claims or demands they may have against PRMMI, PRMSA, their directors or officers, based on the employees employment or the termination of said employment.[15]

After each of the Plaintiffs accepted the ERP and executed the Part One Waiver, each of them received a document entitled Explanation of the Forms of Retirement Allowance Payment, which included calculations of their individual payments under the different methods available through the Retirement Plan, calculated using the credits granted by the ERP.[16] Said calculations were actuarial computations prepared by Buck Consultants, Inc.[17] The document included calculations for each Plaintiff of the payments they would receive under the single life annuity method and the social security leveling option.[18] Each Plaintiff, then, elected his desired method of payment, which was the social security leveling option.[19] Subsequently, on the last day of employment, each of the Plaintiffs executed the Part Two Waiver and received the agreed upon bonus.[20]

Thereafter, Plaintiffs began to receive their pension benefits through their chosen method of payment which was the social security leveling option. On or about March 1993, while calculating retirement estimates for another PRMMI employee, Buck discovered that it had miscalculated the social security leveling option.[21] The miscalculation caused the Retirement Plan to overpay those employees under 58 years of age who selected the social security leveling option method of payment.[22] PRMMI notified the affected employees by phone and through a letter.[23] The affected employees were not required to return the overpayments and were given the opportunity to choose once again their preferred method of payment, i.e. life annuity, or

continue either the Company's contributory or non contributory health plan. Note: at 65, those who choose the contributory plan automatically convert to the non-contributory plan. Part One Waiver, ¶ 2 (a).

**14.** The second waiver provided that:

In consideration for executing this Agreement, the Company will provide Employee by first class mail, on the date this Agreement becomes effective, ... a check in an amount equal to a lump sum retirement transition bonus equal to two months' base salary ... Part Two Waiver, ¶ 2(a).

**15.** The Part One waiver provides in pertinent part:

*Employee agrees to and hereby releases the Company, any related companies, Puerto Rico Maritime Shipping Authority and the employees. officers and directors of any of them. From all claims or demands Employee my have based on Employee's employment with the Company or the termination of that employment. This includes specifically a release of any rights or claims Employee may have under the Age Discrimination in Employment Act* (as amended), 29 U.S.C. § 621 *et seq.*, which prohibits age discrimination in employment, and a release of any rights or claims Employee may have under any other federal, state, Commonwealth or local laws or regulations prohibiting employment discrimination. Employee also releases the Company from any claims for wrongful discharge, constructive discharge, and any claims that the Company has dealt with Employee unfairly or in bad faith under any federal, state, Commonwealth or local laws or regulations. This release covers both claims that Employee knows about and those Employee may not know about. Part One Waiver, ¶ 3.

**16.** *See* Explanation of the Forms of Retirement Allowance Payment, for each employee, at DE 121 exh. 20 as supplemented by DE 140, exh. 2.

**17.** Affidavit of Joseph LoCicero of 6/10/96, ¶ 6, DE 98.

**18.** *See supra*, note 16.

**19.** *See* Application Forms for Normal or Early Retirement, for each of the Plaintiffs, DE 121, exh. 29, as supplemented by DE 140, exh. ——.

**20.** *See* PRMMI's Request for Admissions, Request # 17, and Plaintiffs' answer thereto ¶ 3, at DE 121 exhs. 9 and 10.

**21.** Letter from PRMMI to Joseph LoCicero of 5/10/93 at 1, ¶ 3, DE 121, exh. 24; Buck's Answer to Plaintiffs' First Set of Interrogatories, question # 11, DE 87, exh. 18, p. 7/000085, and Supplemental Answer, DE 87, exh.18, p. 2/000092.

**22.** Letter from PRMMI to Joseph LoCicero of 5/10/93, p. 1, ¶ 3, DE 121, exh. 24; Letter from PRMMI to Plaintiffs 5/12/93, p. 1, ¶ 2, DE 121, exh. 26.

**23.** Letter from PRMMI to Plaintiffs 5/12/93, DE 121, exh. 26.

corrected leveling option.[24] Buck agreed to pay the Retirement Plan for the monies paid in excess due to their miscalculation.[25] Plaintiffs' benefits were reduced effective June 1, 1993.[26]

## DISCUSSION

### A.  Validity of Plaintiffs' Waivers.

The Older Workers Benefit Protection Act ("OWBPA") amended the Age Discrimination in Employment Act ("ADEA") to spell out clear and ascertainable standards to govern the enforcement of a waiver of age discrimination claims.[27]  *See* 29 U.S.C. § 626(f)(1); *see also Blakeney v. Lomas Information Systems, Inc.*, 65 F.3d 482, 484 (5th Cir. 1995).  Although there are several cases from the First Circuit discussing the general criteria for finding valid employment waivers, those cases are not concerned with age discrimination claims under ADEA and OWBPA, so there is little guidance in interpreting the effect of OWBPA on age discrimination waivers.  *See. e.g., Rivera–Flores. v. Bristol–Myers Squibb Caribbean*, 112 F.3d 9 (1st Cir.1997) (holding waivers to be valid under ADA); *Smart v. Gillette Co. Long-Term Disab. Plan*, 70 F.3d 173, 179 (1st Cir.1995) (holding severance waivers to be valid in the context of ERISA protected claims).

■ Section 201 of the OWBPA codified at 29 U.S.C. § 626(f)(1) provides that an individual may not waive rights under the statute unless the waiver is "knowing and voluntary."  The statute provides that an ADEA waiver is not "knowing and voluntary" unless the party that requested the waiver has met several specific requirements set forth at sections 29 U.S.C. § 626(f)(1)(A)-(H):

(A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;

(B) the waiver specifically refers to rights or claims arising under this chapter (ADEA);

(C) the individual does not waive rights or claims that arise after the date the waiver is executed;

(D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;

(E) the individual is advised in writing to consult with an attorney prior to executing the agreement;  (F) . . .

(ii) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement;

(G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement;

(H) if a waiver is requested in connection with an exit incentive or other employment termination program . . . the employer . . . notifies the individual in writing in a manner calculated to be understood . . . as to—

(I) any class, unit or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable . . .; and

(ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

The statute also specifies that "[i]n any dispute that may arise *over whether any of the requirements, conditions. and circumstances set forth in subparagraph (A), (B), (C), (D), (E), (F), (G) or (H) of paragraph (1), . . . have been met*, the party asserting the validity of the waiver shall have the burden of proving . . . that a waiver was knowing and

---

**24.**  *Id.* at 2.

**25.**  Letter from PRMMI to Joseph LoCicero of 5/10/93, DE 121, exh.24;

**26.**  See *supra*, note 23.

**27.**  "The [OWBPA], will limit unsupervised waivers to certain situations and then spell out clear and ascertainable standards to govern those situations."  S.Rep. No. 79, 101st Cong., 1st Sess. 17 (1989).

voluntary pursuant to paragraph (1)." 29 U.S.C. § 626(f)(3) (emphasis ours). Thus, under OWBPA, the validity of an age discrimination waiver is measured against compliance with the statutory requirements. As another district court in the First Circuit stated: "Employers can be confident that if they comply with OWBPA, employees will not later be able to express belated misgivings in the form of a lawsuit. Similarly, employees are guaranteed the minimum protections that Congress deemed necessary as a prerequisite to the intelligent surrender of a potentially valuable right." *Soliman v. Digital Equipment Corp.*, 869 F.Supp. 65, 69 (D.Mass.1994).

■ Plaintiffs in the present case do not contest that the waivers complied with the statutory requirements of OWBPA. The releases were written in a clear, easily understandable manner and specifically indicated that the employee released any rights or claims the employee may have had under the Age Discrimination in Employment Act.[28] The release specifically stated that it did not include claims arising after the execution of the release.[29] Plaintiffs were given the statutory required forty five (45) days to consider the ERP package and releases. The ERP package gave to the plaintiffs enhanced retirement benefits, they were not otherwise entitled to, in exchange for the release. They were provided with the statutory seven (7) days to revoke the release and chose not to do so. The release advised Plaintiffs to consult with an attorney. Finally, the ERP package provided Plaintiffs with a listing, by age and classification, of all eligible and ineligible individuals for participation in the program.

■ Notwithstanding, Plaintiffs challenge the validity of the waivers on a theory of deceit. Plaintiffs allege that the consideration they were offered in exchange for the waivers consisted of a specific pension payment, and that they "were deceived by a false pension benefit, specifically agreed, which was unilaterally slashed one year after their retirement." In support for this contention plaintiffs proffer their own affidavits and deposition testimony barely stating that the offer they accepted consisted of a sum certain.[30] However, a simple reading of the Part One Waiver shows that the consideration being offered to the employees consisted of the age and service time credits for computation of the benefits according to the Retirement Plan formulas.[31] Plaintiffs have not proffered any evidence to show that the specific monthly payments they eventually began to receive under the social security leveling option were part of the waivers. Because each release is a fully integrated document,[32] the parol evidence rule bars extrinsic testimony to alter the clear terms of the waiver. See *Smart v. Gillette Co. Long-Term Disab. Plan*, 70 F.3d 173, 179 (1st Cir.1995) (holding, in the context of severance waivers releasing disability benefits and potential ERISA claim, that "[i]n no event may extrinsic evidence be employed to contradict explicit contract language . . . ").

Further, the record shows that at the time Plaintiffs executed the Part One Waiver, they had not received the Explanation of the Forms of Retirement Allowance Payment explaining the benefits under their selected method of payment, the social security leveling option. The record shows that all the Plaintiffs executed the Part One Waiver between November 26, 1991 and January 23, 1992,[33] and that they did not receive the

---

**28.** *See supra* note 15,

**29.** Part One Waiver, ¶ 6, DE 121, exh. 15, p. 3.

**30.** *See* Plaintiffs' Declarations Under Penalty of Perjury, DE 130, exhs. 3(a)-(r).

**31.** *See supra*, note 13.

**32.** The Part One waiver provided in pertinent part:
> *This is the whole Agreement between Employee and Company relating to part one of the program,* This Agreement shall bind the Company

and the Employee, whether or not the Part Two Agreement is signed by the Employee. *No promises or oral or written statements made to Employee other than those statements in the November Letter or this Agreement may be relied upon by the Employee in signing this Agreement* . . . .
Part One Waiver, ¶ 12.

**33.** Part One Waiver executed by each Plaintiff, at DE 140, exh. 1.

explanation forms including each Plaintiff's benefits under the social security leveling option until after January 29, 1992,[34] when they had already executed the Part One Waiver. The Part Two waiver clearly stated that the consideration in exchange for said waiver consisted of a lump sum payment which all Plaintiffs received. Thus, Plaintiffs' contention that the consideration for the waiver included a specific monthly pension payment is untenable.

We need go no further. Because the Court finds that the waivers are valid and constitute a release of all claims arising from the termination of Plaintiffs' employment, including ADEA claims, the Court hereby dismisses Plaintiffs' ADEA, OWBPA, Puerto Rico's Law 100, Section 1983, and breach of contract claims arising from the termination of Plaintiffs' employment. The only surviving claims are Plaintiffs' claims under ERISA for reduction of their pension payments.

IT IS SO ORDERED.

---

**34.** *See* Explanation of the Forms of Retirement Allowance Payment, for each Plaintiff, DE 140,  exh. 2.