Abigail **MOJICA ESCOBAR**, Plaintiff,

v.

Gaspar **ROCA**, El Vocero De Puerto Rico; A, B, C, D, E, F, Defendants,

v.

Nicolas **NOGUERAS** and the Conjugal Partnership Constituted by Him and Abigail Mojica Escobar, Third-party defendants.

Civil No. 95–1173(PG).

United States District Court, D. Puerto Rico.

March 18, 1996.

---

Alfonso Rivera Valdivieso, Hato Rey, P.R., for Plaintiff.

Juan R. Marchand Quintero, San Juan, P.R., for Defendants.

Nicolás Nogueras, Condado, Santurce, P.R., for Third Party Defendants.

### OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

Before the Court are defendants' motion for summary judgment. For the reasons stated herein, defendants' motion is GRANTED.

### I. Background

Plaintiff Abigail Mojica Escobar ("Mojica") is the wife of a prominent Puerto Rico politician, Senator Nicolás Nogueras ("Nogueras"), who appears as a third-party defendant. Mojica lives in Orlando, Florida, with her daughter.[1] The defendants are the El Vocero newspaper—one of Puerto Rico's three principal newspapers—and El Vocero's publisher, Gaspar Roca. Mojica seeks money

---

1. Mojica's residence in Florida is the basis of the Court's diversity jurisdiction over the parties.

damages resulting from a series of articles run by El Vocero investigating the finances of her husband, Senator Nogueras. Among other particulars, these articles raised questions about the financing of Mojica's house in Orlando. Several of the articles included photographs of the house. Mojica is mentioned by name or implication in approximately twenty articles identified by the defendants which were published as a part of El Vocero's on-going investigation of Nogueras.[2]

■ Although the complaint is not entirely clear, when construed liberally, it appears that Mojica seeks damages for defamation, invasion of privacy, emotional and physical distress, and other consequential damages resulting El Vocero's publications. She also seeks damages for harm *she* suffered that was caused by El Vocero's alleged defamation of her husband.[3] El Vocero has filed a motion for summary judgment.

## II. Summary Judgment Standard

■ Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "Where the defendant has invoked Rule 56 and asserted a lack of supporting evidence, the plaintiff must establish the existence of a triable issue which is both genuine and material to his claim." *Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986)). "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party [and] 'material' means that the fact is one that might affect

the outcome of the suit under the governing law." *United States v. One Parcel of Real Property, Etc. (Great Harbor Neck, New Shoreham, R.I.),* 960 F.2d 200, 204 (1st Cir. 1992).

■ "On issues where the nonmovant bears the ultimate burden of proof at trial, he may not defeat a motion for summary judgment by relying on evidence that is 'merely colorable' or 'not significantly probative.'" *Pagano v. Frank,* 983 F.2d at 347 (quoting *Anderson v. Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11). The nonmovant must "present definite, competent evidence to rebut the motion." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991), *cert. denied* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). "Summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990). Nonetheless, "[n]o credibility assessment may be resolved in favor of the party seeking summary judgment." *Woodman v. Haemonetics Corp.,* 51 F.3d 1087, 1091 (1st Cir. 1995) (citation omitted).

## III. Discussion

### A. Defamation–Related Claims

■ The majority of plaintiff's defamation-related claims derive from her assertion that El Vocero defamed her and her husband.[4] Under Puerto Rico law, a defamation claim requires that plaintiff prove: (1) that the information is false, (2) that plaintiff suffered real damages, and (3) in the case of a private figure plaintiff, that the publication was negligent. In the case of public figure plaintiffs, the U.S. constitutional standard of "actual malice" must also be proved. *Villanueva v. Hernández Class,* 91 J.T.S. 58, p. 8697 (1991)

---

2. The Court notes that El Vocero, not Mojica, identified the articles at issue. This is only one instance of Mojica's less than vigorous prosecution of this case.

3. Such derivative claims are permissible under Puerto Rico law. *Sociedad de Gananciales v. El Vocero de Puerto Rico,* 94 J.T.S. 12 at 11504–05 (1994).

4. For the purposes of this opinion *only,* the Court assumes that plaintiff has a cause of action for defamation even as to those publications in which she is neither expressly nor implicitly mentioned. Therefore, given the result which this opinion reaches, defendants' motion for partial summary judgment, as it relates to this issue, is **MOOT.**

**34**

(citations to U.S. and Puerto Rico Supreme Court cases omitted).

■ That plaintiff casts herself as a private figure is of no constitutional significance, since the constitution requires that where a newspaper publishes speech of public concern about a private figure, the private-figure plaintiff cannot recover damages without showing that the statements at issue are false. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776, 106 S.Ct. 1558, 1563, 89 L.Ed.2d 783 (1986). The Court finds that El Vocero's articles on Nogueras' financing, which included a probe of the financial arrangements by which the conjugal partnership between Nogueras and his wife purchased the Orlando home, were of public concern. Similarly, that Mojica makes a variety of tort claims that are contingent upon the underlying alleged defamation does not change the analysis. *Hustler v. Falwell*, 485 U.S. 46, 53, 108 S.Ct. 876, 881, 99 L.Ed.2d 41 (1988).

■ As a direct result of plaintiffs' potentially sanctionable failure to comply with El Vocero's numerous discovery requests, defendants have not provided direct evidence documenting the truth of the publications at issue in this case. Under Puerto Rico's defamation law, however, this failure of proof on El Vocero's part is of no importance, since, as explained above, the law requires that plaintiffs prove that the alleged defamation is false. In other words, proof of falsity is an element of the plaintiff's *prima facie* case.

Defendants motion for summary judgment asserts the truth of their publications. In response, Mojica must "present definite, competent evidence to rebut the motion" in order to "establish the existence of a triable issue which is both genuine and material to [her] claim." *See* above discussion of summary judgment standard. Mojica has failed utterly to meet this burden which the law places upon her. The record is bereft of a single shred of competent evidence, other than her conclusory assertions, which tends to establish the falsity of any of the publications at issue in this litigation. Thus, Mojica has failed to establish an essential element of her claim.

The Court observes that such evidence would not be difficult to produce if, in fact, it existed. Bank records, loan documents, canceled checks, and the like, would suffice. However, both in response to El Vocero's discovery requests and in order to support its objection to El Vocero's motion for summary judgment, Mojica failed to provide the necessary documentation.

Of course, the Court's decision today does not establish the truth of the El Vocero articles. However, the law of defamation places the burden of proving the falsity of the offending publications squarely on Mojica. Today's decision simply means that she has failed to carry this burden. Therefore, defendants' motion for summary judgment as to plaintiff's defamation claims—both as they relate to her and her husband—shall be granted.

### B. Privacy–Related Claims

As mentioned previously, Mojica's pleadings are not entirely intelligible. This component of her complaint, however, appears to allege that El Vocero's taking and publication of the photograph of her Orlando home were actionable invasions of her privacy. She similarly complains of a phone call made to her by an El Vocero reporter.

■ A claim for the invasion of privacy is actionable under Article II, §§ 1 and 8 of the Puerto Rico constitution. Section 1 states: "The dignity of the human being is inviolable." Section 8 provides: "Every person has the right to the protection of law against abusive attacks on his honor, reputation and private or family life." As discussed below, the Puerto Rico Supreme Court's application of the constitutional right to privacy has been similar to the common law tort of invasion of privacy. The application of the right to particular factual situations is left to the "prudent discretion" of the trial courts. *Colón v. Romero Barceló*, 112 D.P.R. 573, 579 (1982). Although the Court has found no cases directly on point to either of Mojica's claims, the following brief survey of the case law demonstrates that Mojica does not have an actionable claim.

8

35

In *Pueblo v. Figueroa Navarro*, 104 D.P.R. 721 (1976), a private investigator was found liable for invasion of privacy because of the intrusive and offensive manner in which the investigation was conducted. The investigator alarmed the plaintiff, who was the object of the surveillance, by driving past the home many times, pausing to look with binoculars, and then parking in front of the house and taking photographs. The Court found the detective liable because he "had a direct contact with the person under investigation." *Id.* at 726. Thus, this Court has interpreted *Figueroa* as standing for the proposition that, "a person does not violate the right to privacy as long as the conduct of the investigation is not 'ostensible and daring,' or unreasonably intrusive." *Dopp v. Fairfax Consultants, Ltd.*, 771 F.Supp. 494, 497 (D.P.R. 1990) (Laffitte, J.).

Here, defendants aver that their agent took the photograph in question from a public road, and that plaintiff was never aware of the photographer's presence. Mojica does not dispute these assertions. The Court further finds from examination of the photograph that the photograph depicts only the home, and no persons are in the photograph. When these facts are viewed in light of the standard announced in *Figueroa*, the Court finds that the act of taking the photograph was not an invasion of the plaintiff's privacy.

Similarly, publication of the photograph of the home is not an actionable invasion of privacy. *Colón v. Romero Barceló*, 112 D.P.R. 573 (1982) supports this conclusion. In *Colón*, the government broadcast an advertisement for crime prevention using a photograph of a murder victim. The victim's family sued. The Puerto Rico Supreme Court permitted the claim because the photograph was shocking, offensive and unauthorized. Furthermore, the Court emphasized that the publication of the photograph was not essential to spread the message of crime prevention; there were other means available. *Id.* at 581–82. "When the invasion of privacy is *necessary* and *unavoidable,* and it constitutes the most adequate means for obtaining a lawful purpose, then there is no violation." *Id.* (emphasis in original).

Here, the publication of the photograph of the plaintiff's home was "the most adequate means for obtaining a lawful purpose." Several articles run by El Vocero feature photographs of the home. Captions beneath these photographs describe the home as, alternatively, a "palace," (Exhibit # 6 of Defendant's motion for summary judgment (from the February 13, 1995 edition of El Vocero)) and a "mansion" (Exhibit # 7 (February 18, 1995)). The Court finds that these descriptions are not inaccurate. The home is, indeed, quite large. In an article about the financial abuses of an important Puerto Rico politician, showing the home that is the alleged ill-gotten-gains of the Senator's activities was a reasonable means for communicating the egregiousness of the Senator's conduct.

Regarding Mojica's complaints about the El Vocero reporter's phone call, the Court finds the complaint frivolous. Had the reporter called numerous times over Mojica's objections, it might be different; but Mojica alleges—and El Vocero admits to—only one phone call. To the extent that Mojica, herself, placed a phone in her home, she waived any privacy objections she may have to receiving a single phone call over that line. *See Puerto Rico Telephone Co. v. Martinez*, 114 D.P.R. 328 (1983) (holding that right to privacy can be waived). If Mojica did not like the tone of the reporter's voice, she should have hung up.

### IV. *Conclusion*

For the reasons stated herein, defendants' motion for summary judgment (**Dkt.# 82**) as to all of plaintiff's claims is **GRANTED.** This case shall, therefore, be **DISMISSED.** Accordingly, El Vocero's third-party claim against Nogueras shall also be **DISMISSED.**

**IT IS SO ORDERED.**