**Bilodeau v. NHSP**                    CV-01-436-B    11/25/02

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE


**Brandon Lee Bilodeau**

   **v.**                                Civil No. 01-436-B
                                        Opinion No. 2002 DNH 210
**New Hampshire State Prison**


### MEMORANDUM AND ORDER


Brandon Lee Bilodeau, proceeding pro se, brings this 42 U.S.C. § 1983 action against New Hampshire State Prison ("NHSP"[1]) for alleged violations of rights secured to him under the First and Fourteenth Amendments. Bilodeau, an inmate incarcerated in NHSP's Concord, New Hampshire facility, alleges that NHSP has violated both his right to freely exercise the pagan religion and his right to equal protection by preferring other religions over the pagan religion. Bilodeau seeks monetary and injunctive relief for NHSP's alleged past and ongoing offenses.

---

[1] Bilodeau initially brought suit against NHSP, Azure Green (a company from whom Bilodeau purchased items), and an unnamed employee of NHSP who worked in the mailroom. Magistrate Judge Muirhead ruled, in response to a Motion for Clarification, that NHSP is the sole defendant. See Doc. No. 11.

NHSP moves for summary judgment based on Bilodeau's alleged failure to exhaust administrative procedures as is required by the Prison Litigation Reform Act of 1995 ("PLRA"). 42 U.S.C. § 1997e(a) (Supp. 2002). Bilodeau has not filed an objection to NHSP's summary judgment motion.

## I.  BACKGROUND[2]

### A.  The Prison Grievance Process

NHSP employs a multi-tiered administrative grievance process. First, inmates are encouraged to address any problem by discussing it with the staff member who may help to resolve it. Second, if the problem is still not resolved to the inmate's satisfaction, he or she may submit an inmate request slip. Third, if the inmate is unsatisfied with the resolution of the request slip, he or she may appeal by submitting a grievance form to the Warden. Lastly, the inmate may appeal the Warden's resolution of the grievance by filing an appeal with the Commissioner of Corrections. Def.'s Mem. for Summ. J., Ex. C, NH

---

[2]  I describe the facts in the light most favorable to Bilodeau, the non-movant. See Navarro v. Pfizer Corp., 261 F.3d 90, 93-4 (1st Cir. 2001) (explaining the operation of Fed. R. Civ. P. 56) (citation omitted).

Dep't of Corr. Policy and Procedure Directive ("PPD"), statement number 1.16; Def.'s Mem for Summ J., Ex. D, Inmate Manual; <u>see</u> <u>Lafauci v. New Hampshire Dep't of Corr.</u>, No. 99-253-M 2001 WL 1570932 at ** 2-3 (D.N.H. Oct. 31, 2001) (unpublished order) (describing in detail the multi-tiered administrative grievance system).

## B. **Bilodeau's Grievances**

Bilodeau practices the "pagan" religion. He currently is incarcerated in the Secure Housing Unit ("SHU"), the prison's maximum security unit. Although NHSP permits clerics to visit with inmates in SHU, it does not permit "pagan" priests to make such visits.

Beginning in October of 2001, Bilodeau submitted a series of inmate request slips concerning what he believed were efforts by prison officials to thwart his right to practice his religion. On October 11, 2001, Bilodeau filed a request slip notifying the chaplain, Dan Smith, that he had ordered a religious gargoyle necklace and book entitled "Daemonic Magick" from the company Azure Green. Smith responded that it was his understanding that "medallions" were not permitted in SHU, but that he would "get the book to him." Def.'s Mem. for Summ. J., Ex. A1. On October

-3-

25, 2001, Bilodeau filed another request slip, addressed to Smith, expressing his confusion about the mailroom receiving items that he had asked be addressed to Smith. Bilodeau requested that Smith contact Azure Green to find the whereabouts of the package. Smith responded by stating that he had not received a package from Azure Green and that he had contacted their customer service department. Def.'s Mem. for Summ. J., Ex. A1. On November 13, 2001, Bilodeau directed the mailroom to forward all rejected mail from Azure Green to a Massachusetts address. He requested that a list of all forwarded mail be sent to him, including the contents of the rejected Azure Green package. Id. Bilodeau also completed a request slip addressed to the mailroom requesting that they permit him to receive a "pagan" "religious" catalogue from the "Circle Network." Def's Mem. for Summ. J., Ex. A1. He wrote that he understood that the catalogues usually get disposed of, but would appreciate receiving this catalogue given its religious nature. The mailroom responded that "pagan materials are not allowed in." Id.

Bilodeau subsequently submitted a series of request slips asking for Christian items. For example, Bilodeau submitted

-4-

another request slip to the mailroom on November 3, 2001 stating that he had ordered a "Christian catalog[ue]" so he could "order a [B]ible and newsletters from it." Def.'s Mem. for Summ. J., Ex. A1. The mailroom's response, in contrast with his request for the "pagan" catalogue, was "so noted, order through chaplain." Id. Months later, in March of 2002, Bilodeau requested rosary beads that were "chain linked" together as opposed to the beads bound together with string. Id. The response stated that all rosaries are donated to NHSP by outside churches and that they are generally on a string. Later that same month, Bilodeau completed another request slip asking for a set of rosary beads. The request was forwarded to the chaplain.

Bilodeau does not assert that he appealed any of the issues he raised in his request slips by completing and submitting grievance forms to the warden. Moreover, PPD 1.16 provides that all inmate request slips and grievance forms must be sent to offender records. Denise Heath, the Department of Corrections Assistant Supervisor for Offender Records at NHSP, reviewed Bilodeau's file and found "no grievance slips submitted by Mr. Bilodeau to the warden or the commissioner." Health Aff. ¶ 3, Def.'s Mem. for Summ. J., Ex. A. Phil Stanley, the Commissioner

-5-

of the Department of Corrections, also states that he reviewed his grievance logs and determined that he had received only one grievance form from Bilodeau. This grievance form concerned Bilodeau's request for a "vegetarian diet" in SHU. Stanley Aff. ¶ 3, Def.'s Mem. for Summ. J., Ex. B.

## II. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." <u>Intern'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr.</u>, 103 F.3d 196, 199-200 (1st Cir. 1996)(citations omitted); <u>see</u> <u>Anderson v. Liberty Lobby,</u>

-6-

Inc., 477 U.S. 242, 248 (1986).  All reasonable inferences and all credible issues are resolved in favor of the nonmoving party. See Anderson, 477 U.S. at 255-56.

Once the moving party has properly carried its burden, the burden shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted."  Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex, 477 U.S. at 323; Anderson, 477 U.S. at 249).  If the non-moving party's "evidence is merely colorable, or is not significantly probative" summary judgment cannot be entered. Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992) (quoting Anderson, 477 U.S. at 249-50) (internal quotation marks omitted).

### III.  ANALYSIS

As noted above, NHSP moves for summary judgment arguing that Bilodeau did not exhaust the administrative remedies available to him through the NHSP grievance system.  The PLRA provides, in

relevant part, that "no action shall be brought with respect to prison conditions under section 1983...or any other Federal law, by a prisoner...*until* such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) (Supp. 2002) (emphasis added); see generally Porter v. Nussle, 534 U.S. 516 (2002); Booth v. Churner, 532 U.S. 731 (2001).  Congress enacted the PLRA to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  Porter, 534 U.S. at 516-17 (citing Booth, 532 U.S. at 737).  In Booth, the Supreme Court held that the PLRA requires an inmate to exhaust all available administrative procedures, regardless of the type of relief offered through the administrative system.  Booth, 532 U.S. at 741.  The Court noted that "where Congress specifically mandates, exhaustion is required."  Id. (citation omitted) (internal quotation marks omitted).

In Porter, the Supreme Court resolved a conflict among Courts of Appeals in defining the phrase "prison conditions" as it is used in the PLRA.  Porter, 534 U.S. at 527-32.  The Porter Court held that "the PLRA's exhaustion requirement applies to *all*

inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Id. at 532 (emphasis added); see Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 34 (1st Cir. 2002). As a result, a district court may not address the merits of an inmate's claim, regardless of the nature of the charge or the type of relief sought, unless he or she can demonstrate exhaustion of all available internal procedures. See Porter, 534 U.S. at 532; Booth, 532 U.S. at 741.

Although Bilodeau completed multiple request slips addressing the NHSP's alleged interference with his right to practice his religion, he never appealed from the prison's alleged failure to resolve his complaints by filing grievance slips with the Warden. Accordingly, he has failed to comply with the PLRA's exhaustion requirements.

## IV. CONCLUSION

For the forgoing reasons, New Hampshire State Prison's motion for summary judgment (Doc. No. 15) is granted.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

November 25, 2002

cc:  Brandon Lee Bilodeau, pro se
     Nancy J. Smith, Esq.