**TOWERS FINANCIAL CORPORATION,**
**Plaintiff,**

v.

**DUN & BRADSTREET, INC., Defendant.**

**No. 92 Civ. 629 (KTD).**

United States District Court,
S.D. New York.

Sept. 16, 1992.

Michael F. Armstrong, Lord Day & Lord, Barrett Smith, New York City, for plaintiff.

John L. Warden, Sullivan & Cromwell, New York City, for defendant.

## ORDER AND OPINION

FREEH, District Judge.

Plaintiff Towers Financial Corporation ("Towers") has moved, by Order to Show Cause, for a temporary restraining order barring defendant Dun & Bradstreet, Inc. ("D & B") from publishing a Business Information Report ("BIR Report") on Towers pending expedited discovery and hearing on Towers' motion for preliminary injunction. Towers alleges that because the proposed BIR Report is both false and misleading, it constitutes a violation of the

Lanham Act, 15 U.S.C. § 1125(a)(2), and the New York State General Business Law, §§ 349 and 350, as well as the common law tort of unfair competition. D & B disputes Towers' claims, and argues that (1) the BIR Report is not advertising or promotion, as required under the Lanham Act; (2) the BIR Report is neither false nor misleading; and (3) the BIR Report is protected by the First Amendment.

For the reasons stated at oral argument and below, the Court finds that Towers is entitled to the requested relief. Accordingly, pending completion of expedited discovery and hearing on Towers' motion for a preliminary injunction, D & B is prohibited from publishing or otherwise disseminating either new or supplemental BIR Reports regarding Towers.

## BACKGROUND

It is undisputed that D & B, a subsidiary of The Dun & Bradstreet Corporation (the "Corporation"), gathers and publishes business information, including credit reports, regarding millions of companies. D & B utilizes a standardized format for its Business Information Reports, which provide basic information regarding the subject company such as its history, finances, management, shareholders, credit history, and the suits, liens and/or judgments against it.

Another of the Corporation's subsidiaries, Dun & Bradstreet Receivable Management Services, Inc. ("RMS"), engages in the commercial debt collection business. Towers alleges that it also engages in that business, although the extent to which Towers and RMS actually compete has been hotly disputed. In any event, it seems clear that Towers, like RMS, engages in at least a certain amount of commercial debt collection.[1]

For a number of years, Towers has disputed the accuracy of the Towers BIR Report. Since May 1991, D & B has voluntarily refrained from publishing that Report while the parties have attempted to

resolve their differences. Apparently, when it appeared to D & B that no resolution would be possible, it determined that it would resume publication of the BIR Report as of August 21, 1992. Towers filed the instant application for a temporary restraining order, which this Court heard in its position as the Part I judge. Because D & B requested additional time to brief the issues raised in Towers' motion and agreed to withhold publication pending a hearing on that motion, this Court adjourned the hearing until September 4, 1992.

## DISCUSSION

The standard for a TRO is similar to that applicable to a preliminary injunction—the moving party must demonstrate irreparable harm and either (1) a likelihood of success on the merits or (2) sufficiently serious questions on the merits to make them fair ground for litigation and a balance of hardships tipping decidedly in the moving party's favor. *Local 1814 Int'l Longshoreman's Assoc. AFL–CIO v. New York Shipping Assoc. Inc.*, 965 F.2d 1224, 1228 (2d Cir.1992); *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990). Because we find that Towers has satisfied this stringent standard, D & B is enjoined from publishing or disseminating the Towers BIR Report pending expedited discovery and hearing on the motion for preliminary injunction.

### 1. *Irreparable Harm*

In the Court's view, Towers has demonstrated that it would be irreparably harmed should publication of the Towers BIR Report be permitted to resume at this time. If, as Towers alleges, the Report contains false and misleading information regarding Towers' history and financial condition, Towers' reputation among customers and potential customers will be severely damaged. Although D & B denies Towers' allegations that D & B employees utilize the BIR Report to denigrate Towers and lure away its customers, there can be

---

**1.** Towers states that its two chief lines of business are commercial debt collection for its customers and "factoring" of accounts receivable for its own account. D & B has focused on this latter aspect of Towers' business in denying any direct competition between the two companies.

little doubt that if such conduct does occur, the injury to Towers' reputation in the business community will be exacerbated. Because the potential injury to Towers is both imminent and "incapable of being fully remedied by monetary damages," Towers has made a sufficient showing of irreparable harm. *Reuters*, 903 F.2d at 907; *Jacobson & Co., Inc. v. Armstrong Cork Co.*, 548 F.2d 438, 445 (2d Cir.1977) (damage to reputation and goodwill constitutes irreparable harm); *Fonar Corp. v. Deccaid Services, Inc.*, 787 F.Supp. 44, 48 (E.D.N.Y. 1992) ("Damages to reputation and goodwill, as well as difficulty in proving damages with certainty, prove a danger of irreparable harm.").

2. *Substantial Questions on the Merits*

■ Although we do not find that Towers has shown that it is likely to succeed on the merits of its claims, Towers has raised sufficiently serious questions on the merits to make its claims a fair ground for litigation. As noted previously, Towers alleges that D & B's conduct constitutes a violation of the Lanham Act, 15 U.S.C. § 1125(a)(2), the New York State General Business Law, §§ 349 and 350, and the common law tort of unfair competition. In order to establish a Lanham Act violation, Towers must demonstrate that (1) D & B made false or misleading factual representations regarding the nature, characteristics, or qualities of Towers' services; (2) D & B used the false or misleading representations "in commerce"; (3) D & B made the false or misleading representations in the context of commercial advertising or commercial promotion; and (4) D & B made Towers believe that it was likely to be damaged by the false or misleading factual representations. *McNeil–P.C.C., Inc. v. Bristol–Myers Squibb Co.*, 938 F.2d 1544, 1548–49 (2d Cir.1991); *National Artists Management Co., Inc. v. Weaving*, 769 F.Supp. 1224, 1230 (S.D.N.Y.1991).

■ Similarly, in order to make out a claim under §§ 349 and 350 of the New York General Business Law, Towers must show that (1) D & B engaged in a commercial practice or used an advertisement which was misleading in a material respect; and (2) the deceptive practice or advertising injured Towers. *Mennen Co. v. Gillette Co.*, 565 F.Supp. 648, 655 (S.D.N.Y.1983), *aff'd*, 742 F.2d 1437 (2d Cir.1984); *McDonald v. North Shore Yacht Sales, Inc.*, 134 Misc.2d 910, 513 N.Y.S.2d 590, 593 (Sup.Ct. Nassau Cty.1987).

■ Finally, to make out a claim of unfair competition under New York law, Towers must show that D & B engaged in "commercial immorality," or " 'misappropriat[ed] for the commercial advantage of one person … a benefit or 'property' right belonging to another.' " *Roy Export Co. v. Columbia Broadcasting System, Inc.*, 672 F.2d 1095, 1105 (2d Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982).

■ As the Court noted at oral argument, the parties in this case dispute certain basic issues: (1) whether Towers is, in fact, a significant competitor of RMS; (2) whether RMS employees have been using the D & B's BIR Report to promote its commercial debt services; and (3) whether the BIR Report contains false or misleading statements regarding Towers. Those disputed facts are central to all three of Towers' claims and will be the subject of an evidentiary hearing prior to determination of the motion for preliminary injunction. However, even at this stage in the litigation, Towers has raised substantial questions not only regarding the accuracy of the BIR Report,[2] but also regarding the use of that Report by RMS employees in promoting RMS, a Towers competitor. This showing is sufficient to entitle Towers to temporary injunctive relief.

---

**2.** At oral argument, counsel for D & B correctly noted the well-established rule in this Circuit that extrinsic evidence is required to demonstrate that a particular factual representation is misleading, or impliedly false. *Johnson & John-* *son Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir.1992). However, in this case, Towers also alleges that the BIR Report is expressly false.

### 3. *Balance of Hardships*

 Finally, the balance of hardships clearly weighs in Towers' favor. While Towers will likely suffer irreparable harm should a false and misleading BIR Report be released, D & B has not demonstrated that it will be injured at all by a brief delay in publication of the Report. In fact, D & B has delayed publication of the BIR Report for seventeen months, even agreeing to withhold such publication in order to respond more fully to the instant motion. If the sole issue were the comparative injuries to be suffered by Towers and D & B, our discussion of the balance of hardships factor could end here. But D & B has raised a number of First Amendment concerns which affect, not only the analysis of the relative hardships here, but also the merits of the underlying claims.

 It is undisputed that the BIR Report constitutes "speech" subject to First Amendment protections. The Court is well-aware that prior restraints on speech are strongly disfavored. *Nebraska Press Association v. Stuart*, 427 U.S. 539, 556, 96 S.Ct. 2791, 2801, 49 L.Ed.2d 683 (1976) ("The Court has interpreted [the First Amendment] guarantees to afford special protection against orders that prohibit the publication or broadcast of particular information or commentary—orders that impose a 'previous' or 'prior' restraint on speech."). The Court is also aware that even if, as we find, the BIR Report is "commercial" speech,[3] it is entitled to First Amendment protection, even if "that pro-

tection is not as extensive as that accorded to the advocacy of ideas." *Central Hudson*, 447 U.S. at 588, 100 S.Ct. at 2363.

 However, Towers correctly argues that D & B's claims under the First Amendment are co-extensive with its defenses to Towers' allegations. Thus, D & B is either (1) issuing a false and misleading report regarding Towers in an effort to promote D & B and disparage Towers, in violation of the Lanham Act, as Towers claims; or (2) issuing an accurate report or not promoting D & B at all, as D & B claims. If the report is false or misleading, it is not protected by the First Amendment and can be restrained under the Lanham Act. *Central Hudson*, 447 U.S. at 563, 100 S.Ct. at 2350 ("[T]here can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity."); *Consumers Union of U.S. Inc. v. New Regina Corp.*, 664 F.Supp. 753, 767–68 (S.D.N.Y.1987) (same). If the report is not false or misleading, it is protected and cannot be restrained under the Lanham Act.

In either event, D & B's First Amendment claims rise or fall with its defenses in this action. Because substantial questions of fact remain in dispute with regard to those defenses, we do not find that the constitutional concerns are sufficient to preclude the temporary injunctive relief requested.

For the foregoing reasons, D & B is ordered not to publish or otherwise disseminate either new or supplemental BIR Re-

---

**3.** D & B argues that its credit reports are not commercial speech, relying on the Supreme Court's decision in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985). However, the central issue in *Greenmoss*, a libel case, was whether the particular credit reports at issue involved a sufficiently "public concern" to require a showing of "actual malice" before presumed or punitive damages could be imposed. Only the dissenting opinion stated that the D & B credit report should not be considered commercial speech. 472 U.S. at 789–92, 105 S.Ct. at 2961–62.

As a general rule, commercial speech can be identified based on "the 'common sense' distinction between speech proposing a commercial transaction, which occurs in an area traditional-

ly subject to government regulation, and other varieties of speech." *Central Hudson Gas & Electric v. Public Service Commission of New York*, 447 U.S. 557, 589, 100 S.Ct. 2343, 2363, 65 L.Ed.2d 341 (1980). Even if the five credit reports at issue in *Greenmoss* could not be considered commercial speech within that definition, the report at issue here is distinguishable. In this case, D & B admitted that it has hundreds of new orders for the Towers BIR Report, as well as hundreds of other orders which need to be supplemented. To the extent that those hundreds of reports are used by customers to evaluate Towers' services they function much like advertising—they are directly related to the customers' decision whether or not to enter a commercial transaction with Towers.

ports regarding Towers pending completion of expedited discovery and hearing on Towers' motion for a preliminary injunction.

SO ORDERED.