The **SAN JUAN STAR,** Plaintiff,

v.

**CASIANO COMMUNICATIONS, INC.,** Defendant.

No. Civ.98–1372 PG.

United States District Court, D. Puerto Rico.

Jan. 7, 2000.

Ignacio Rivera–Cordero, Rivera & Montalvo, San Juan, PR, for The San Juan Star Company, plaintiff.

Edna Hernandez–Arroyo, Hector Reichard–Jr., Reichard & Escalera, San Juan, PR, for Casiano Communications Inc., defendant.

## OPINION & ORDER

PEREZ–GIMENEZ, District Judge.

Defendant Casiano Communications, Inc. ("Casiano") moves for the dismissal of Plaintiff The San Juan Star's ("TSJS") complaint for failure to state a claim on the grounds that the speech at issue is not commercial and is thus subject to heightened First Amendment protection. (Dkt.7) Defendant also contends that the publications at issue do not constitute false advertisements, libel, and that TSJS lacks standing to exercise a claim under Puerto Rico's antitrust laws. Plaintiff opposes Defendant's motion. (Dkt.28)

## FACTS

Casiano published the results of an audit ("Circulation Ad # 1") declaring that Casiano's circulation for its publication, Caribbean Business, was "the largest circulation English-language newspaper in Puerto Rico." (Dkt.7, exh. 2) Casiano listed CB's circulation at 44,851 including all paid and non-paid circulation, in Circulation Ad # 1. See id. Circulation Ad # 1 also listed TSJS's circulation to be 36,674, including all paid and non-paid circulation. See id.

Casiano also allegedly published two other advertisements (Ads # 2 & # 3) soliciting advertisement money from businesses for its special-interest supplement. (Dkt.28, exh. A) These advertisements, allegedly run on May 28, 1998 and June 11, 1998 in CB, listed CB's audience at 228,700 readers. See id. Additionally, a July 15, 1998 letter from Angel Luis Mercado and Miguel A. Vega of Radisson Normandie Hotel addressed to Geraldo Angulo of TSJS, cited the same figure (228, 700 readers) as CB's audience (Ad # 4). See id. at exh. B

## DISCUSSION

### A. Lanham Act Claim

Congress enacted the Lanham Act "to protect persons engaged in such commerce against unfair competition." 15 U.S.C. § 1127. Section 43(a) of the Lanham Act provides in relevant part that:

Any person who ... uses in commerce any ... false or misleading description of fact, or false or misleading representation of fact, which—

...

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125 (a)(1)(B). "This section provides protection against a 'myriad of deceptive commercial practices,' including false advertising or promotion. *Resource Developers v. Statue of Liberty–Ellis Island Found.*, 926 F.2d 134, 139 (2d Cir. 1991). Section 43(a) of the Lanham Act has been characterized as a remedial statute that should be broadly construed. *See Gordon & Breach Science Publ's v. American Inst. of Physics*, 859 F.Supp. 1521, 1532 (S.D.N.Y.1994) [, *aff'd by* 166 F.3d 438 (2d Cir.1999) ] (citing cases)." *Seven–Up Co. v. Coca–Cola Co.*, 86 F.3d 1379, 1382–83 (5th Cir.1996).

To sustain an action under § 43(a) a plaintiff must allege:

(1) that the defendant has made false or misleading statements as to his own product or another's; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled [sic] in interstate commerce; and (5) that there is likelihood of injury to the plaintiff in terms of declining sales, loss of goodwill, etc. *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 872 (3d Cir.1992) [, *reh'g denied*, 954 F.2d 869

(3d Cir.1992) ] (internal brackets and citation omitted).

*Seven–Up Co.*, 86 F.3d at 1383 n. 3.

██ The Lanham Act does not define either "advertising" or "promotion." Nor is the Act's legislative history helpful regarding this issue; it addresses only the requirement that the advertising or promotion be "commercial" in nature. The "commercial" requirement was inserted to ensure that § 43(a) does not infringe on free speech protected by the First Amendment.[1] Despite Defendant's erroneous argument to the contrary, the advertisement is clearly commercial in nature.

In order for representations to constitute "commercial advertising or promotion" under Section 43(a)(1)(B), they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classical advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Seven–Up Co.*, 86 F.3d at 1384. Defendant's advertisements fall squarely within this definition.

Courts have generally given the terms advertising and promotion their plain and ordinary meanings. As stated above, "[t]he courts are also in agreement, however, that 'the Act's reach is broader than merely the "classic advertising campaign."' *Gordon & Breach*, 859 F.Supp.

---

**1.** For instance, see 135 Cong.Rec. H1216–17 (daily ed. April 13, 1989) (statement of Rep. Kastenmeier), "[t]he proposed change in section 43(a) should not be read in any way to limit political speech, consumer or editorial comment, parodies, satires, or other constitutionally protected material.... The section is narrowly drafted to encompass only clearly false and misleading commercial speech." Also see 134 Cong.Rec 31,851 (Oct. 19, 1988),

statement of Rep. Kastenmeier, commenting that the reach of Section 43(a) "specifically extends only to false and misleading speech that is encompassed within the "commercial speech" doctrine developed by the United States Supreme Court." The Court in *Gordon & Breach*, 859 F.Supp. at 1533–34 discusses the legislative history of the Lanham Act, as does the Court in *Seven–Up Co.*, 86 F.3d at 1383–84 n. 6.

at 1534 (citing cases)." *Seven–Up Co.*, 86 F.3d at 1384. Both the required level of circulation and the relevant "consuming" or "purchasing" public addressed by the dissemination of false information will vary according to the specifics of the industry.

"The Court is [also] well-aware that prior restraints on speech are strongly disfavored. *Nebraska Press Assoc. v. Stuart*, 427 U.S. 539, 556, 96 S.Ct. 2791, 49 L.Ed.2d 683 ... (1976)." *Towers Fin. Corp. v. Dun & Bradstreet, Inc.*, 803 F.Supp. 820, 824 (S.D.N.Y.1992). As with other speech, commercial speech is entitled to First Amendment protection, although the exact amount of protection varies case-by-case. *See id.* If commercial speech is false or misleading, it is no more protected by the First Amendment than a business information report, and may be restrained under the Lanham Act. *See id.*

■ Section 43(a) of the Lanham Act is a broad remedial statute:

> Finally, § 43(a) covers a publisher of a controlled circulation magazine who falsely inflates the size of his audience and thereby causes reduced advertising revenues to a competing publisher, even though the misrepresentations did not refer in any way to plaintiff's magazine or otherwise expressly take aim at an identifiable competitor. *Ames Publishing Co. v. Walker–Davis Publications, Inc.*, 372 F.Supp. 1 (E.D.Pa.1974).

*In re Uranium Antitrust Lit.*, 473 F.Supp. 393, 408 (N.D.Ill.1979). By alleging that Casiano has misrepresented TSJS's circulation figures, CB's circulation figures, or both, TSJS "has framed an actionable misrepresentation within the scope of § 43(a) of the Lanham Act." *Id.* at 409.

However, "[e]ven if the misrepresentations covered by the Lanham Act are broader than those involved in a deceptive comparative advertising case, a plaintiff must at least show that the allegedly false

or deceptive statements are of a type that are likely to have a direct impact upon sales of its own product. *See In Re Uranium Antitrust Litigation*, 473 F.Supp. at 407–409." *Gimix, Inc. v. JS & A Group, Inc., et al.*, 699 F.2d 901, 908 (7th Cir. 1983). Plaintiff may submit affidavits, depositions, or other material to introduce any issue of fact as to likelihood of impact on sales of advertisements or of confusion of customers by the advertisements in question. *See id.* Here, Plaintiff introduced a letter written by representatives of the Radisson Normandie Hotel addressed to Geraldo Angulo of TSJS which quoted the alleged erroneous readership figure of CB. *See Ad # 4.*

■ A grant of summary judgment to Defendant for all ads at this point in time would be premature. The Court must make the inquiry "does the advertisement have a tendency to mislead, confuse, or deceive?" *See R.J. Reynolds Tobacco Co. v. Loew's Theatres, Inc.*, 511 F.Supp. 867, 876 (S.D.N.Y.1980). While the Court is convinced that reliance on ABC's report for TSJS's circulation number satisfies the "literal truth" requirement under the Lanham Act, issues remain concerning the potential impact of the "weekly vs. daily distribution" question as well as the accuracy of CB's subscription and readership numbers.[2] The Court sees value in both sides of this issue; it is "unfair" to misrepresent that product A and product B are the same without giving all the necessary relevant information. *See Rhone–Poulenc Rorer Pharms, Inc. v. Marion Merrell Dow, Inc.*, 93 F.3d 511 (8th Cir.1996). On the other hand, "[t]he Lanham Act does not prohibit false statements generally. It prohibits only false or misleading descriptions or false or misleading representations of fact made about one's own or another's goods or services." *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2nd Cir.1995). Advertising buyers are

---

**2.** CB has not offered any substantiation for claiming 228,700 readers. CB also has not sufficiently substantiated its claim of 44,851

subscriptions. A self-filed, self-serving statement cannot end the inquiry at the summary judgment stage.

likely sophisticated, and it remains to be seen just how confused they were by this alleged misrepresentation. *See Arrow Fastener Co. Inc. v. Stanley Works*, 59 F.3d 384 (2d Cir.1995); *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100 (6th Cir.1991); *Mylan Labs., Inc. v. Pharmaceutical Basics, Inc.*, 808 F.Supp. 446 (D.Md.1992), *rev'd* 7 F.3d 1130 (4th Cir.1993), *cert. denied*, 510 U.S. 1197, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994); *Walker–Davis Publs., Inc. v. Penton/Ipc, Inc.*, 509 F.Supp. 430 (E.D.Pa.1981).

Defendants summary judgment motion is therefore GRANTED as to TSJS's circulation for Circulation Ad # 1, DENIED as to CB's circulation as to Circulation Ad # 1, and Ads # 2, # 3, and # 4, and Plaintiff's claim under § 43(a) of the Lanham Act for Circulation Ad # 1 for TSJS's circulation figure is GRANTED. However, it is still at issue whether Defendant's omission of the weekly/daily distinction may warrant a claim.

**B. Antitrust Claim under 10 L.P.R.A. § 251, et seq.**

Defendant also seeks to dispose of Plaintiffs antitrust claim, alleging that Plaintiff lacks standing to assert such a claim. (Dkt.7) Plaintiff has alleged that Defendant violated § 259(a) of the Laws of Puerto Rico, entitled "Fair Competition" which forbids "[u]nfair methods of competition, and unfair or deceptive acts or practices in trade or commerce." 10 L.P.R.A. § 259(a). Section 268(a) of the Laws of Puerto Rico permits "[a]ny person who shall be injured in his business or property by another person, by reason of acts or intended acts, forbidden or declared to be unlawful by the provisions of this chapter, *except section 259 and 261 of this title*, may sue therefor in the Superior Court, and shall recover threefold the damages by him sustained, plus costs, including a rea-

sonable amount of attorney's fees." [3] (Emphasis added).

■ While the Court may disagree with the logic of such a result, § 268(a) does not provide a cause of action to Plaintiff under §§ 259 or 261. Wise or unwise, this is the plain meaning of the statute. Therefore, Defendant's motion is granted as to Plaintiff's § 259(a) cause of action and that claim is DISMISSED WITH PREJUDICE.

**C. Claim under 31 L.P.R.A. § 5141**

Section 5141, better known as article 1802, is the torts statute under Puerto Rican law. 31 L.P.R.A. § 5141. This article states that any "person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." *Id.* To recover under article 1802, three elements must be met: (1) a real injury occurred; (2) there is a causal nexus between the injury and the act or omission; and (3) the act or omission was culpable or negligent. *See Pérez Escolar v. Ramon Collado Y Fed. Inc. Co.*, 90 P.R.R. 785, 90 D.P.R. 806, 1964 WL 14267 (1964); *Hernández v. Fournier*, 80 P.R.R. 94, 80 D.P.R. 93, 1957 WL 13027 (1957).

At this stage, the Court need not decide more than this: Defendant has not moved for summary judgment on the article 1802 claim. The Court therefore does not make any ruling, aside from acknowledging that said claim still breaths.

**D. Libel Claim under 32 L.P.R.A. § 3142**

Defendant has also moved for summary judgment on Plaintiff's libel claim. Courts tend to favor granting summary judgment more frequently when a party's First Amendment rights are at issue, " 'since prolonged litigation might have a "[chilling] effect" on the exercise of those rights.' *García–Cruz v. El Mundo, Inc.*, [108

---

3. Section 269a, which allows for injunctions, also excludes §§ 259 and 261, as well as 263(f). The inescapable conclusion is that

these sections do not provide a private right of action.

D.P.R. 174], 182, 1978 WL 48790 [ (1978) ]." *Villaneuva v. Hernández Class, et al.*, 128 P.R.Off.Trans. 1, 19 (1991). Plaintiff has failed to oppose Defendant's motion for summary judgment on the libel claim.

■ " 'Under Puerto Rico law, a defamation claim requires that the plaintiff prove: (1) that the information is false, (2) that plaintiff suffered real damages, and (3) in the case of a private figure plaintiff, that the publication was negligent.' *Mojica Escobar v. Roca*, 926 F.Supp. 30, 33 (D.P.R.1996) (citations omitted)." *Ayala–Gerena, et al., v. Bristol Myers–Squibb Co., et al.*, 95 F.3d 86, 98 (1st Cir.1996). *See also González–Martínez v. López*, 118 P.R.Off.Trans. 229, 233 (1987); *Villaneuva v. Hernández Class, et al.*, 128 P.R.Off. Trans. 1, 17–18 (1991). In the case of a public figure, a plaintiff may prevail only if the plaintiff shows actual malice. *See id.*

> The prevailing [libel] doctrine in Puerto Rico stems from *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), which states that publication of a false report or unjustified statements relating to the official conduct of a public officer is not libelous, unless the information was maliciously published, that is, with knowledge of its falsity or with reckless disregard for whether it was true or false. *Torres Silva v. El Mundo, Inc.*, 106 D.P.R. 415, 1977 WL 50788 (1977) [106 P.R.Off. Trans. 581].

*Marital Community v. López–Cintrón*, 116 P.R.Off.Trans. 142, 145 (1985). *See also Villaneuva v. Hernández Class, et al.*, 128 P.R.Off.Trans. at 17–18. Actual malice is never presumed, but rather must be established through "clear and convincing evidence." *See id. See also Villaneuva v. Hernández Class, et al.*, 128 P.R.Off.Trans. at 17–18. The issue of sufficiency of evidence to prove actual malice is strictly a question of law. *See Villaneuva v. Hernández Class, et al.*, 128 P.R.Off.Trans. at 20. However, the fact that the information

published was true is a valid defense available in libel cases. *See id.* at 17 n. 14.

The Court must determine on the basis of the affidavits, depositions, or other documentary evidence whether Plaintiff can prove actual malice. *See id.* at 19–20. "In other words, at the summary judgment stage, the plaintiff must produce evidence of the uncontroverted material facts that if proved true in a trial on the merits would establish that the newspaper acted with actual malice by publishing the libelous reports." *Id.* at 20.

■ In the present case, the Court finds that both parties are public figures and that, therefore, Plaintiff must plead and prove actual malice. The Court further determines that the information relied on by Defendant was not false. *See* Defendant's Statement of Uncontested Material Facts Nos. 5–10. Plaintiff's response is inadequate: "[Casiano] utilizes a report of the Audit Bureau of Circulations (ABC) dated 31 December 1996. This is done [de]spite [sic] the fact that there is a more current report issued by the Certified Audit of Circulations (CAC) dated 30 September 1997." (Dkt.28, pp. 12–13) This is no argument, for the Court need not decide if one report is "more true" than the other. It is enough that Defendant relied on a report that Plaintiff does not argue is false. This is a valid defense and ends Plaintiff's libel on libel. Defendant's motion is therefore granted, and Plaintiff's libel claim is DISMISSED WITH PREJUDICE.

## CONCLUSION

In light of the above findings, the Court GRANTS Defendant's summary judgment motion as to TSJS's circulation for Circulation Ad # 1, DENIES as to CB's circulation as to Circulation Ad # 1, as well as Ads # 2, # 3, and # 4. Plaintiff's claim as to TSJS's circulation figures as used in Circulation Ad # 1 is DISMISSED WITH PREJUDICE. The Court also GRANTS Defendant's motion for summary judgment and DISMISSES WITH PREJUDICE

Plaintiff's antitrust claim under Puerto Rican law. Because Defendant has not moved for summary judgment on Plaintiff's article 1802 tort claim, the Court does not rule on that claim, and said claim continues. Plaintiff's libel claim is DISMISSED WITH PREJUDICE, as Defendant's summary judgment motion on that issue is GRANTED.

**IT IS SO ORDERED.**